IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

BRYCE FRANKLIN,

    Petitioner,

vs.                                                            No. 1:19-CV-00450 JB/KRS

FNU HORTON, Warden, and
HECTOR H. BALDERAS, Attorney General
for the State of New Mexico,

    Respondents.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER comes before the Court on Petitioner Bryce Franklin's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241,[1] filed May 13, 2019. (Doc. 1). Mr. Franklin alleges Respondents violated his due process rights during his prisoner disciplinary proceeding for possessing tattoo paraphernalia. Respondents filed an answer addressing the merits of Mr. Franklin's petition on September 23, 2020, and Mr. Franklin filed a reply in support of his petition on June 4, 2021. (Docs. 13 and 21). United States District Judge James O. Browning referred this case to the undersigned to conduct hearings, if warranted, and to perform any legal analysis required to recommend to the Court an ultimate disposition. (Doc. 2). Having considered the parties' submissions, the relevant law, and the record in this case, the Court recommends denying Mr. Franklin's claims and dismissing this case with prejudice.

---

[1] Although Mr. Franklin's petition was brought under 28 U.S.C. § 2254, the Court has determined that it should be construed under 28 U.S.C. § 2241 because it "attacks the execution of a sentence" including "prison disciplinary matters." (Doc. 8) at 1 (quoting *McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809, 811 (10th Cir. 1997)); *see also Yellowbear v. Wyoming Atty. Gen.*, 525 F.3d 921, 924 (10th Cir. 2008) ("Section 2241 is a vehicle for … attacking the execution of a sentence …. A § 2254 petition, on the other hand, is the proper avenue for attacking the validity of a conviction and sentence.") (citations omitted).

I. **<u>Factual Background and Procedural History</u>**

Mr. Franklin is an inmate in the custody of the New Mexico Corrections Department ("NMCD"). *See* New Mexico Offender Search, https://cd.nm.gov/offender-search/ (last accessed October 21, 2021). On June 16, 2017, the NMCD issued Mr. Franklin an inmate misconduct report charging him with "A-30 Tattooing and/or Possession of Tattoo Paraphernalia." (Doc. 13-1) at 99 (Exhibit Q). The reporting employee, Sergeant Alaniz, stated that on June 16, 2017, he was conducting a property inventory on Mr. Franklin's property and found containers of red and blue ink and a motor known to be used for tattooing in containers of coffee and peanut butter. *Id.* Disciplinary officer, Jessica Herrera, conducted an investigation by reviewing the misconduct report and evidence, and recommended that a Major Level hearing be held to address the charge. *Id.* at 97-98. On June 22, 2017, Mr. Franklin was notified that a Major Level hearing on the charge was set for June 26, 2017. *Id.* at 97.

Mr. Franklin attended the June 26, 2017 hearing and denied the charge against him. *Id.* at 93. He denied the items were his and asserted that the confiscated motor was not tattoo paraphernalia. He also submitted an inventory sheet that did not list the confiscated items, and he argued that his property was not inventoried before he left another facility and he was not provided a property sheet prior to his transfer. *Id.* at 93-94. On July 3, 2017, Hearing Officer Kevin Quigley found Mr. Franklin guilty of the A-30 offense and recommended 60 days loss of good-time credits and 30 days loss of canteen and electronics privileges. *Id.* at 91. The hearing officer stated that he interviewed inmate Nick Gonzales who "[c]ould not clarify how inmate Bryce Franklins [sic] property was handeled [sic]." *Id.* at 93. The hearing officer explained that the confiscated contraband "were documented and listed on a chain of custody form attached to the misconduct report and attached to the Disciplinary packet." *Id.* at 94. He further explained

that the Property Inventory List reflecting all of Mr. Franklin's property prior to his transfer was signed by Mr. Franklin which acknowledged the information on the document was accurate. *Id.* at 94-95. Regarding the confiscated motor, the hearing officer stated: "The altered motor was concealed and found within your assigned property in which you signed for. The type, size or shape of the motor is not what you're being charged for. The concealed, altered, and recovered Items from your property clearly supports the … Charge of A(30) Tattooing and/or Possession of Tattoo Paraphernalia." *Id.* at 94.

Mr. Franklin appealed the hearing officer's decision to the warden, arguing the hearing officer failed to provide a copy of the proceedings, refused to allow Mr. Franklin to call his proposed witness, and did not address Mr. Franklin's motions or allow him to introduce exhibits. *Id.* at 12-13 (Exhibit B). Mr. Franklin further argued the decision was improper because Mr. Franklin's inventory sheet did not list the coffee and peanut butter jars and because his guilt was not supported by a preponderance of the evidence. *Id.* The warden affirmed the hearing officer's decision, making the following findings: Mr. Franklin signed for a packet of documents from the hearing and did not request additional documents; the hearing officer spoke with Mr. Franklin's witness but the witness was not allowed at the hearing due to prison policy; and the hearing officer addressed all of Mr. Franklin's motions. *Id.* at 11. The warden acknowledged that the inventory sheet did not document the items that were confiscated as required by policy, but the warden found that issue was sufficiently addressed by the hearing officer. *Id.*

Next, Mr. Franklin filed a *pro se* petition for writ of habeas corpus in state district court, in which he claimed the disciplinary proceeding did not adhere to policy and the decision was not based on sufficient evidence. *Id.* at 1-8 (Exhibit A). The state district court ordered Mr. Franklin to file an amended pleading with the required documentation. *Id.* at 21-22 (Exhibit G).

Mr. Franklin filed a Motion for Leave to Conduct Discovery, explaining that the documents sought by the state court were attached to the motion to compel that he had filed with his petition. *Id.* at 23-26 (Exhibit H). Subsequently, the state district court dismissed the petition, stating that summary dismissal was appropriate and also noting that it "did look at the paperwork attached to the Motion to Compel," but the attached documents "fail[ed] to set out a prima facie case of the denial of a constitutional right." *Id.* at 29-30 (Exhibit J). Mr. Franklin then filed a petition for a writ of certiorari with the New Mexico Supreme Court, arguing that he was improperly prevented from calling his witness and that the evidence against him was insufficient. *Id.* at 34-35 (Exhibit K). On January 24, 2019, the New Mexico Supreme Court denied the petition for a writ of certiorari, and on February 20, 2019, denied Mr. Franklin's motion for reconsideration. *Id.* at 80-90 (Exhibits N, O, P).

On May 13, 2019, Mr. Franklin filed his Petition in this Court. (Doc. 1). Mr. Franklin raises the following claims: (1) there is no evidence to support his conviction for possession of tattooing material; (2) he was wrongly prevented from calling his witness during the disciplinary proceeding; (3) summary dismissal of his state habeas petition was improper while his motion to conduct discovery was pending; and (4) his conviction was based on insufficient evidence. (Doc. 1) at 5, 7-8, 10.

## II.     Exhaustion

"A habeas petitioner is generally required to exhaust state remedies whether his action is brought under § 2241 or § 2254." *Montez v. McKinna*, 208 F.3d 862, 866 (10th Cir. 2000); *see also Wilson v. Jones*, 430 F.3d 1113, 1117 (10th Cir. 2005) (noting habeas petitioner seeking relief under 28 U.S.C. § 2241 is required to first exhaust available state remedies, absent showing of futility). "The exhaustion of state remedies includes both state court and

administrative remedies." *Parkhurst v. Pacheco*, 809 Fed. Appx. 556, 557 (10th Cir. 2020) (unpublished). "[A] habeas petitioner must exhaust administrative remedies unless prison officials have prevented, thwarted, or hindered his attempts to avail himself of such remedies." *Id.* To exhaust state court remedies, a petitioner must "properly present" the issue "to the highest state court, either by direct review of the conviction or in a postconviction attack." *Dever v. Kansas State Penitentiary*, 36 F.3d 1531, 1534 (10th Cir. 1994) (citation omitted); *see also Parkhurst*, 809 Fed. Appx. at 557 (stating that a petitioner "must have first fairly presented the substance of his federal habeas claim to state courts" in order to exhaust state judicial remedies).

Upon review of the record, the Court finds that Mr. Franklin exhausted his available administrative remedies by proceeding through NMCD's disciplinary appeals process. He also exhausted his state court remedies by raising in both his state habeas and certiorari petitions the same grounds for relief that he now sets forth in his Section 2241 petition. In addition, Respondents concede that Mr. Franklin has exhausted both his administrative and state court remedies. *See* (Doc. 13) at 4, n.1; *see also Parkhurst*, 809 Fed. Appx. at 557 (exhaustion requirement for Section 2241 petitions is not jurisdictional and may be waived by the state). Therefore, the Court will consider the merits of the claims Mr. Franklin raises in his petition.

### III.   Standard of Review

A petitioner is entitled to habeas corpus relief under Section 2241 if he is able to demonstrate that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "The fundamental purpose of a § 2241 habeas proceeding is to allow a person in custody to attack the legality of that custody, and the traditional function of the writ is to secure release from illegal custody." *Palma-Salazar v.*

*Davis*, 677 F.3d 1031, 1035 (10th Cir. 2012) (internal quotation marks and citation omitted). In the Tenth Circuit, federal courts conduct de novo review of Section 2241 habeas petitions. *See Walck v. Edmondson*, 472 F.3d 1227, 1235 (10th Cir. 2007); *see also Bogue v. Vaughn*, 439 Fed. Appx. 700, 703 (10th Cir. 2011) (unpublished). While the Court construes Mr. Franklin's pro se pleadings liberally, "we must refrain from usurping the role of prison administrators while protecting the constitutional rights of the inmate." *Bogue*, 439 Fed. Appx. at 703 (citation omitted).

### IV. Analysis

In his petition, Mr. Franklin challenges on constitutional due process grounds the prison disciplinary proceedings that resulted in the loss of his good time credits.[2] *See* (Doc. 1) at 5-14. It is well established that prisoners possess a liberty interest in earned good time credits. *Stine v. Fox*, 731 Fed. Appx. 767, 769 (10th Cir. 2018) (unpublished) (citing *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974)). Because prisoners possess a liberty interest, they are entitled to due process protections before being deprived of those credits. *Wolff*, 418 U.S. at 558.

When a prison disciplinary hearing may result in the loss of earned credits, a prisoner must be accorded "(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." *Superintendent, Mass. Corr. Inst.*

---

[2] The other two sanctions imposed against Mr. Franklin—loss of canteen and electronics privileges—do not constitute protected liberty interests under the due process clause. "[R]estrictions on an inmate's telephone use, property possession, visitation and recreation privileges are not different in such degree and duration as compared with the ordinary incidents of prison life to constitute protected liberty interests under the Due Process Clause." *See Marshall v. Morton*, 421 Fed. Appx. 832, 838 (10th Cir. 2011) (unpublished).

*v. Hill*, 472 U.S. 445, 454 (1985); *see also Wolff*, 418 U.S. at 563-67.  In addition, revocation of good time credits does not comport with the minimum procedural due process requirements unless the prison's disciplinary findings are "supported by some evidence in the record." *Hill*, 472 U.S. at 454 (emphasis added).

That said, "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff*, 418 U.S. at 556.  Although the right of a prisoner to call witnesses and present documentary evidence is central to the *Wolff* requirements, the right is "necessarily circumscribed by the penological need to provide swift discipline in individual cases." *Ponte v. Real*, 471 U.S. 491, 495 (1985).  The right to call witnesses is further subject to the "mutual accommodation between institutional needs and objectives and the provisions of the Constitution." *Id.* (internal quotation marks omitted).  "[A]s with a prisoner's request to call a particular witness, prison officials are required to consider a request for documentary evidence on an individualized basis." *Howard v. United States Bureau of Prisons*, 487 F.3d 808, 813 (10th Cir. 2007).  "Prison officials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority." *Wolff*, 418 U.S. at 566.

### A.  Claim One

Mr. Franklin first argues that there was insufficient evidence to support the disciplinary action because the inventory sheet failed to note that any items were confiscated, and because no explanation was provided as to how the motor was used for tattooing.  (Doc. 1) at 5.  In the hearing officer's written decision, he addressed the issue of the inventory sheet and explained that the jars of peanut butter and coffee that contained the contraband items were confiscated, documented, and listed on a chain of custody form attached to the misconduct report.  (Doc. 13-

1) at 94.  In considering Mr. Franklin's appeal, the warden acknowledged that the inventory sheet should have documented the items that were confiscated but found that the hearing officer sufficiently addressed the issue.  *Id.*  at 11.  Mr. Franklin does not explain how his due process rights were violated by the absence of the contraband on the inventory sheet, especially since the items were listed on another form and documented as part of the misconduct report.  Regarding the motor, the hearing officer explained that it was contraband because it was altered and found with ink bottles, which supported the A-30 charge.  *See id.* at 94 ("The type, size or shape of the motor is not what you're being charged for.  The concealed, altered, and recovered Items from your property clearly supports the … Charge of A(30) Tattooing and/or Possession of Tattoo Paraphernalia.").

The Court finds that these claims were sufficiently addressed by the hearing officer and do not establish that Mr. Franklin's due process rights were violated.  The listing of the confiscated items on the chain of custody form, as well as the four photographs of the jars of coffee and peanut butter with the contraband, support the hearing officer's decision.  *See* (Doc. 13-1) at 100-104.  The Court finds this evidence satisfies the requirement that revocation of good time credits must be "supported by some evidence in the record." *Hill*, 472 U.S. at 454 (emphasis added).

### B.  Claim Two

Next, Mr. Franklin claims that he was not afforded sufficient due process because he was not allowed to call Nick Gonzales as a witness at the disciplinary hearing.  (Doc. 1) at 7.  The hearing officer stated in his decision that he interviewed Nick Gonzales who "stated that the inventory process was placed into storage," that "he was on the same transport leaving from the same facility as" Mr. Franklin, and that he "[c]ould not clarify how inmate Bryce Franklin[']s

property was hand[]led." (Doc. 31-1) at 93.  The Tenth Circuit has held that "harmless error review applies to a habeas petition alleging a denial of the right to present witnesses at [a] prison disciplinary hearing." *Grossman v. Bruce*, 447 F.3d 801, 805 (10th Cir. 2006).  In applying harmless error review, "[a] prisoner cannot maintain a due process claim for failure to permit witness testimony unless he also shows that the testimony would have affected the outcome of his case." *Bird*, 729 Fed. Appx. at 631 (citation omitted).  Here, Mr. Franklin states that Mr. Gonzales "could have testified that the prison officials who packed Franklin and Nick did not label or inventory their property," and that the "property room was a disaster … with no organization."  (Doc. 21) at 3.  He states that this testimony would have supported Mr. Franklin's argument that the jars the contraband was found in did not belong to him.  *Id.*

The hearing officer considered Mr. Franklin's arguments regarding the labeling and inventory of his property and explained that the property officer of the facility Mr. Franklin was transferred from conducted an inventory in Mr. Franklin's presence, and Mr. Franklin received a copy of the inventory sheet and signed an acknowledgement that the information was accurate.  (Doc. 31-1) at 94 ("Your signature was noted on [the] bottom of the Property Inventory Sheet you presented at [the] hearing. … Your signature acknowledges the receipt and the accurate information of this document.").  Mr. Franklin does not explain how Mr. Gonzales' testimony regarding the lack of organization in the storage room would have affected the hearing officer's decision that was based on Mr. Franklin acknowledging and signing for the property on the inventory sheet.  Moreover, Mr. Franklin's statements about what Mr. Gonzales "could have" testified to are contrary to what Mr. Gonzales told the hearing officer, which was that he "[c]ould not clarify how inmate Bryce Franklin[']s property was hand[]led."  *Id.* at 93.  Accordingly, the substance of what Mr. Gonzales would have testified to was before the hearing officer.  That the

hearing officer ultimately did not find Mr. Gonzales' potential testimony persuasive does not give rise to a due process violation. Therefore, the Court finds that any error in denying Mr. Franklin the right to call Mr. Gonzales as a witness was harmless.

In addition, the warden explained in her decision on appeal that "Level VI inmates are not allowed to be present at other inmate's hearings." *Id.* at 11. The right of a prisoner to call witnesses is subject to the "mutual accommodation between institutional needs and objectives and the provisions of the Constitution." *Ponte*, 471 U.S. 495 (internal quotation marks omitted). Prison officials must consider a prisoner's request to call a particular witness on an individualized basis, and "must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority." *Wolff*, 418 U.S. at 566; *Howard*, 487 F.3d at 813. Therefore, given the prison's limitation on the presence of Level VI inmates at other inmate's hearings, the hearing officer had the discretion to deny Mr. Gonzales as a witness, which does not constitute a denial of Mr. Franklin's due process rights. *See Bird v. Pacheco*, 729 Fed. Appx. 627, 631 (10th Cir. 2018) (unpublished) (explaining that the "denial of witnesses is not a per se violation of due process in the context of prison disciplinary proceedings").[3]

### C. Claim Three

Mr. Franklin's third claim is that the state district court improperly dismissed his habeas petition on the basis that it did not include the proper documents. (Doc. 1) at 8. In denying Mr.

---

[3] Mr. Franklin "disputes the alleged fact that the hearing officer spoke with Nick Gonzales," and states that Mr. Gonzales was next door to Mr. Franklin at the time of the hearing and Mr. Franklin did not witness the hearing officer talking to him. (Doc. 21) at 5. This disputed fact does not alter the Court's decision because, as explained, prison officials have the discretion to deny witnesses on the basis of institutional needs or policies, so the hearing officer was not required to interview Mr. Gonzales.

Franklin's sate habeas petition, the state district court stated it was summarily denying the matter because Mr. Franklin failed to submit the necessary documentation, and also stated that it "did look at the paperwork attached to the Motion to Compel," and that "a review of those documents fails to set out a prima facie case of a constitutional right." (Doc. 31-1) at 29-30.  The paperwork attached to the Motion to Compel included the inmate misconduct report, Mr. Franklin's disciplinary appeal, and the warden's answer to the appeal.  *Id.* at 11-14.  The state district court found that the manner in which the disciplinary proceeding was conducted did not result in a violation of Mr. Franklin's due process rights.  *Id.* at 30.

To establish a violation of his constitutional rights under Section 2241, Mr. Franklin must show that the state court decision was either "contrary to, or involved an unreasonable application of, clearly established Federal law" or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. 2254(d); *Williams v. Addison*, 2009 WL 1752172, at *8, n.13 (W.D. Okla.) (collecting cases where Tenth Circuit has applied Section 2254(d)'s standard of review to Section 2241 petitions challenging execution of sentence).  Mr. Franklin's claim regarding the state court decision does not establish the violation of federal law, and the state court decision was not based on an unreasonable determination of the facts in light of the evidence.  To the contrary, as set forth throughout this decision, the record demonstrates that "the three steps mandated by *Wolff* were followed and … there was some evidence to support" the disciplinary decision.  *Mitchell v. Maynard*, 80 F.3d 1433, 1445 (10th Cir. 1996).  Therefore, the Court recommends this claim be denied.

### D. Claim Four

Mr. Franklin's final claim is that the disciplinary decision improperly relied solely on the prison officer's misconduct report. (Doc. 1) at 10.  The hearing officer stated in his decision that

11

he relied on the written misconduct report as well as the evidence submitted in the case. (Doc. 13-1) at 91 ("The Hearing Officer's final decision was based on a thorough review of all documents, evidence and testimony presented in this case."). This evidence included four photographs of the contraband, as well as a completed Inventory/Chain of Custody form describing the items confiscated from Mr. Franklin. *Id.* at 100-104. Therefore, the hearing officer relied on more than just the misconduct report for his decision. Moreover, even if the hearing officer had only relied on the misconduct report, that would not constitute a denial of Mr. Franklin's due process rights because the requirement is that "some evidence" supports the disciplinary decision. *See Hill*, 472 U.S. at 455-56 ("[T]he requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits . . . . [T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board."); *see also Ruelas v. Zuercher*, 240 Fed. Appx. 796, 797 (10th Cir. 2007) (unpublished) (concluding that due process requirements were satisfied in disciplinary proceeding because incident report alone constituted "some evidence" to support hearing officer's decision to revoke good time credit).

### E. *Wolff* Factors

Finally, the Court considers whether the prison disciplinary proceedings complied with the due process requirements as set forth in *Wolff*. The record shows that Mr. Franklin received advanced written notice of the charge against him, as well as the investigating officer's findings and his recommendation that a major-level hearing be conducted. *See* (Doc. 13-1) at 98 (noting that Mr. Franklin received a copy of the Misconduct Report on June 16, 2017). In addition, on June 22, 2017, Mr. Franklin was provided a copy of all disciplinary materials and notice of the June 26, 2017 hearing. *Id.* at 97. The record also shows that Mr. Franklin attended the June 26,

2017 hearing, was advised of his right to remain silent, acknowledged receipt of documents relating to his case, and was advised of his right to appeal. *Id.* at 93-97. At the hearing, Mr. Franklin denied he owned the banned items and offered as an exhibit an inventory sheet that was logged the same day as the misconduct report but failed to list the jars in which the ink bottles and motor were concealed. *Id.* at 93. Moreover, Mr. Franklin presented several arguments for dismissal of the charge, and the hearing officer addressed in writing each of Mr. Franklin's arguments for dismissal, as well as the evidence he relied on for his decision. *Id.* at 93-95.

Accordingly, the Court finds that the three *Wolff* factors were met—Mr. Franklin had advance written notice of the disciplinary charges and an opportunity to be heard, and the factfinder provided a written statement of the evidence relied on and the reasons for the disciplinary action. *Wolff*, 418 U.S. at 563-67. The Court also finds that the disciplinary decision was "supported by some evidence in the record." *Hill*, 472 U.S. at 454. Additionally, the state court's decision on Mr. Franklin's habeas corpus petition did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, nor did it result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. For these reasons, the Court recommends that Mr. Franklin's Section 2241 petition be denied.

V.      **Certificate of Appealability**

No appeal may be taken from a "final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court" unless the petitioner first obtains a certificate of appealability. 28 U.S.C. § 2253(c)(1)(A); *see also Montez*, 208 F.3d at 869 (holding Section 2253(c)(1)(A) applies when a state habeas petitioner is proceeding under Section 2241). A certificate of appealability may issue only if Mr. Franklin "has made a

substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). As set forth above, the Court finds that Mr. Franklin has failed to make the requisite showing of a violation of a constitutional right. Therefore, the Court recommends that a certificate of appealability be denied.

## VI. Recommendation

For the foregoing reasons, the Court recommends that Mr. Franklin's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241, (Doc. 1), and a certificate of appealability, be DENIED and that this case be DISMISSED with prejudice.

_____
**KEVIN R. SWEAZEA**
**UNITED STATES MAGISTRATE JUDGE**

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN FOURTEEN (14) DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1)(c). Written objections must be both timely and specific. United States v. One Parcel of Real Prop., 73 F.3d 1057, 1060 (10th Cir. 1996). A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. Failure to file timely and specific objections will result in waiver of de novo review by a district or appellate court. In other words, if no objections are filed, no appellate review will be allowed.**